*In re* CRISAN ESTATE.

1. APPEAL AND ERROR—STATEMENT OF FACTS—STATEMENT OF QUESTIONS INVOLVED.

Court rules relative to appeals contemplate that a statement of facts and legal question. shall be agreed on by opposing parties.

2. HOSPITALS—MUNICIPAL CORPORATIONS—FREE MEDICAL CARE.

A city which maintains a public hospital is not required to provide free medical care there to persons who are able to pay in the absence of statutory, charter, or ordinance provision requiring it to do so.

3. CONTRACTS—IMPLIED CONTRACTS—RESTITUTION FOR SERVICES.

One who supplies services to another, although acting without the other's knowledge or consent, is entitled to restitution therefor from the other if he acted unofficiously and with intent to charge therefor and the services were necessary to preserve the other's life or health, and the one supplying it had no reason to know that the other would not consent to receiving them if mentally competent, and it was impossible for the recipient to give consent because of her physical or mental condition.

---

REFERENCES FOR POINTS IN HEADNOTES

[3–5]  12 Am Jur, Contracts § 6.

58 Am Jur, Work and Labor §§ 3, 6.

4. Same—Emergency Services—Implied Contracts.
  The law implies a promise to pay for emergency services rendered to an unconscious patient by a public hospital.

5. Hospitals—Public Hospital—Contract Implied by Law.
  A public hospital may charge for care rendered patients who are able to pay therefor under a contract implied by the law.

Appeal from Wayne; McCree, Jr. (Wade H.), J. Submitted January 4, 1961. (Docket No. 62, Calendar No. 48,248.) Decided March 1, 1961.

In the matter of the estate of Sosa Crisan, deceased, the city of Detroit presented claim for medical care furnished her as patient while unconscious. Claim allowed in probate and circuit courts. Executor, Jove Herbey, appeals. Affirmed.

*Cyrowski & Pasternacki* (*Arthur Majewski,* of counsel), for executor.

*Nathaniel H. Goldstick,* Corporation Counsel, *John R. McKinlay,* Assistant Corporation Counsel, for claimant.

Edwards, J. This appeal presents a situation contemplated by our appellate rules but too rarely achieved—a statement of facts and a legal question agreed on by the opposing parties. It should be added that opposing counsel have added to this triumph by briefs which are brief and which cogently argue the interesting legal problem involved.

The question is:

"Will the law imply a promise to pay for emergency services rendered to an unconscious patient by a public hospital?"

The facts are:

Sosa Crisan, hereinafter referred to as the "patient," was an 87-year-old widow of Roumanian origin without any relatives.

While shopping at her grocer's on March 17, 1955, she collapsed and was removed in emergency by the Detroit police department to its Receiving Hospital where she was admitted and remained for 14 days. On March 31st, she was transferred to Central Hospital, an overflow or city-physician's hospital, which took patients under contract with the city of Detroit, where she died without ever regaining consciousness on February 9, 1956, some 11 months later.

Prompt investigation by the city disclosed that the patient owned her own home, whereupon she was classified as a patient with assets and rejected by the Wayne county board of social welfare as, therefore, ineligible for relief.

The city took no steps to appoint a guardian for the patient.

Subsequent investigation disclosed that the patient had $50 in cash, and enjoyed an income of $33 per month as rent from an upper flat. The value of the home is $7,000.

After her death, the appellee (city of Detroit, claimant) presented its claim against her estate, *viz.*:

| | |
|---|---|
| 14 days at Receiving at $29.20/day .. | $  408.80 |
| 315 days at Central at $8.90/day .... | 2,803.50 |
| ambulance ...................... | ·  6.00 |

|  |  |
|---|---|
| Total .............. | $3,218.30 |

The referee allowed the claim in its entirety and thereafter the probate and circuit courts affirmed the same. Motion for new trial was denied, and the patient's executor prosecutes the instant appeal.

Appellant's contentions are that there was no meeting of the minds of the parties as to charges for the services rendered, that neither Mrs. Crisan (because of her mental condition), nor the Detroit department of health (because it was only empowered to operate a *public* hospital, and not to make any charges) was able to contract, and that, under these

circumstances, no contract, actual or implied, could arise.

The trial judge answered these arguments succinctly:

"It is obvious that there was no express contract or one implied in fact because following her collapse decedent was never able consciously to express her assent.   Nevertheless, one who supplies services to another, although acting without the other's knowledge or consent, is entitled to restitution therefor from the other if he acted unofficiously and with intent to charge therefor and the services were necessary to preserve the other's life or health, and the one supplying it had no reason to know that the other would not consent to receiving them if mentally competent, and it was impossible for the recipient to give consent because of her physical or mental condition (Restatement, Restitution, § 116).   This principle has been approved by the Michigan Supreme Court (*In re Dzwonkiewicz Estate*, 231 Mich 165).

"The executor's contention that his obligation to pay must be determined by the decedent's ability, tested during her lifetime, is not tenable.   The authorities upon which he relies are concerned with a statutory obligation to pay when a person shall have been committed to a hospital through legal process.   CL 1948, § 330.21, as amended (Stat Ann § 14.811, as amended).*   The executor also contends that the city of Detroit may not recover because it was under a duty to furnish treatment regardless of the patient's ability to repay.   He directs our attention to no authority for this proposition, and, absent some express limitation, we must conclude that the city of Detroit may charge for services rendered by Receiving Hospital.   The city of Detroit is accordingly entitled to recover under a contract implied in law.   The order of the probate court is

---

* See, currently, PA 1960, No 117.—Reporter.

therefore affirmed and the cause is remanded for further proceedings."

As to the right of Receiving Hospital to make charges to nonwelfare patients, there is indeed astonishingly little authority. The corporation counsel points to State policy providing for reimbursement in parallel situations involving hospitalization expenses paid by counties or the State department of social welfare.*

---

* "The county department shall enter into an agreement signed by the patient or a legally responsible relative or guardian for reimbursement of the net cost to the county in furnishing such hospitalization: Provided, That such an agreement between the patient and the county department shall be deemed to be in existence in respect to an emergency hospitalization. The spouse, parent and adult child or [of?] any such patient being of sufficient ability shall be jointly and severally liable to the county department for the reimbursement of the expenses incurred by the county in furnishing such hospitalization to the extent that such expenses are not reimbursed from another source. Such liability may be enforced in an action at law." PA 1957, No 286, § 66c (CL 1948, § 400.66c, as amended [Stat Ann 1960 Rev § 16.466 (3)]).

"The county department of social welfare is hereby authorized and empowered to collect and receive funds to reimburse the county for expenditures made on behalf of recipients of any form of aid or relief, or hospital care provided at county expense, from such recipients, their relatives legally responsible under the laws of this State for the support of such recipients, or from the estates of recipients, in accordance with the laws of this State, and the rules and regulations of the State department of social welfare, which funds, reimbursed for direct relief, shall be disbursed to carry out the provisions of this act. Agreements for the reimbursement of the county department of social welfare for relief granted to persons or families in their own homes may be required in the cases of applicants whose need for relief is based in whole or in part on inability to obtain funds, moneys, moneys which may be received, income or assets unavailable at the time of application for or grant of relief: Provided, however, That earnings from wages or salaries not due or owing at the time of application for or grant of relief shall not be included in reimbursement agreements. Reimbursements for any form of hospital care-provided at county expense shall be collected and paid over by the department of social welfare to the county treasurer for deposit to the fund from which such expenditure was made: Provided, That no county department of social welfare nor any other agency of county government shall collect or receive reimbursements for hospitalization or other treatment for tuberculosis, whether there is an agreement to reimburse the county or not, unless such reimbursement has been ordered by the State commissioner of health or is found acceptable by him as a voluntary reimbursement as provided in section 3a of Act No 314 of the Public Acts of 1927, as added, being section 329.403a of the Compiled Laws of 1948, and no county department

While the statutes cited to us are obviously not directly applicable to the present case, they tend to negative the assumption for which appellant seeks our endorsement—namely, that a "public" hospital must perforce be one which renders only free care. No statutory, charter, or ordinance provision is cited which imposes a duty of providing free medical care to persons who are able to pay. Like the trial judge, we decline to supply such a requirement.

As to the more difficult question of whether or not on these facts a promise to pay will be implied in law, the Restatement provision relied upon by the trial judge provides as follows:

"A person who has supplied things or services to another, although acting without the other's knowledge or consent, is entitled to restitution therefor from the other if

"(a) he acted unofficiously and with intent to charge therefor, and

"(b) the things or services were necessary to prevent the other from suffering serious bodily harm or pain, and

"(c) the person supplying them had no reason

of social welfare shall collect or receive reimbursements for hospitalization or other treatment for any other communicable disease or diseases. Nothing in this section shall be construed to affect the civil service status, if any, of county employees now engaged in collecting reimbursements for the county for any form of aid, relief or hospital care, under the supervision of any other county department. All such employees, and all collection records and files in the county on cases investigated by the department of social welfare prior to the effective date hereof, shall be transferred to and be under the supervision, control and jurisdiction of the board of social welfare in such county.

"If a county has acknowledged liability or has reimbursed another county for the cost of any form of aid, relief or hospital care provided at county expense, the county so reimbursed shall credit or remit, as the case may be, to the paying county within 60 days, any additional collections thereon from any other source. It shall be the duty of each county department of social welfare to continue to collect according to its best judgment and ability, if so requested by the county which has acknowledged or paid for any form of aid, relief or hospital care provided at county expense." CLS 1956, § 400.77 (Stat Ann 1960 Rev § 16.477).

to know- that the other would not consent to receiving them, if mentally competent; and

"(d) it was impossible for the other to give consent or, because of extreme youth or mental impairment, the other's consent would have been immaterial." Restatement, Restitution, § 116.

This Court appears to have considered the problem before us in 2 cases—*In re Dzwonkiewicz Estate,* 231 Mich 165, and *In re Weber's Estate,* 256 Mich 61. In each, the Court found a promise to pay implied in law.

In the *Dzwonkiewicz Case,* there was a statute (CL 1915, § 13968) which made a guardian liable for the "just debts" of a minor, and which is not applicable here. We read the *Weber Case,* however, as authority for holding that Michigan has previously adopted the essence of the Restatement section which we have quoted.

There is surprisingly little case authority to be found in the reports of the other States upon the problem with which we are concerned. In *Cotnam* v. *Wisdom,* 83 Ark 601 (104 SW 164, 12 LRA NS 1090, 119 Am St Rep 157, 13 Ann Cas 25), the supreme court of Arkansas held (Ann Cas headnote):

"A surgeon summoned by a spectator in an emergency to attend an injured and unconscious person may recover the reasonable value of his services from the estate of the patient although the patient dies- without ever regaining consciousness."

The court (p 605) relied heavily for its reasoning upon a New Hampshire case which said:

"We regard it as well settled by the cases referred to in the briefs of counsel, many of which have been commented on at length by Mr. Shirley for the defendant, that an insane person, an idiot, or a person utterly bereft of all sense and reason by the sudden stroke of accident or disease, may be held liable,

in assumpsit, for necessaries furnished to him in good faith while in that unfortunate and helpless condition. And the reasons upon which this rests are too broad, as well as too sensible and humane, to be overborne by any deductions which a refined logic may make from the circumstance that in such cases there can be no contract or promise in fact,—no meeting of the minds of the parties. The cases put it on the ground of an implied contract; and by this is not meant, as the defendant's counsel seems to suppose, an actual contract,—that is, an actual meeting of the minds of the parties, an actual, mutual understanding, to be inferred from language, acts, and circumstances, by the jury,—but a contract and promise, said to be implied by the law, where, in point of fact, there was no contract, no mutual understanding, and so no promise. The defendant's counsel says it is usurpation for the court to hold, as matter of law, that there is a contract and a promise, when all the evidence in the case shows that there was not a contract, nor the semblance of one. It is doubtless a legal fiction, invented and used for the sake of the remedy. If it was originally usurpation, certainly it has now become very inveterate, and firmly fixed in the body of the law." *Sceva* v. *True,* 53 NH 627, 630.

See, also, 3 Page on Contracts (2d ed), § 1521.

The rationale of the New Hampshire and Arkansas courts is similar to that of the Restatement rule relied on by the circuit judge. The first comment under the Restatement rule quoted above is:

"*Comment:*
"*a.* The rule stated in this section exists in order that a person needing help in an emergency and not able to ask for it should obtain it, the attainment of such a result being aided by assuring compensation to the person rendering the aid if the other is solvent." Restatement, Restitution, § 116, p 484.

The judgment appealed from is affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.